___ FILED      ___ ENTERED
___ LOGGED    ___ RECEIVED

11:23 am, Nov 16 2023
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____Deputy

LNE 9.25.23

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

James I. Hammond
Special Assistant United States Attorney
james.hammond@usdoj.gov

36 South Charles Street
Suite 400
Baltimore, MD 21201-3119

DIRECT: 410-209-4952
MAIN: 410-209-4800
FAX: 410-962-3124

September 25, 2023

David Walsh-Little, Esq.
Law Office of David Walsh-Little, LLC
1014 West 36th Street
Baltimore, Maryland 21211

    Re:   <u>*United States v. Norman Ralph Forrest*</u>
           **Criminal Case No. LKG-22-35**

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to your client, **Norman Ralph Forrest** ("the Defendant") by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. The terms of the agreement are as follows:

### Offense of Conviction

1. The Defendant agrees to plead guilty to Counts One and Two of the Indictment, which charges the Defendant with Conspiracy to Distribute and Possess with Intent to Distribute forty grams or more of fentanyl, in violation of 21 U.S.C. § 846, and Possession with Intent to Distribute forty grams or more of fentanyl, in violation of 21 U.S.C. § 841(a)(1), respectively. The Defendant admits that he is, in fact, guilty of each offense and will so advise the Court.

### Elements of the Offense

2. The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

    <u>Count One</u>:   Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances

    That on or about the time alleged in the Indictment, in the District of Maryland:

    a. an agreement to possess with intent to distribute forty grams or more of a mixture or substance containing a detectable amount of fentanyl, a schedule II controlled substance, existed between two or more persons;

1

    b. the Defendant knew of the conspiracy; and

    c. the Defendant knowingly and voluntarily became a part of the conspiracy.

Count Two:     Possession with Intent to Distribute Controlled Substances

    That on or about the time alleged in the Indictment, in the District of Maryland:

    d. the Defendant knowingly and intentionally possessed forty grams or more of a mixture or substance containing a detectable amount of fentanyl, a schedule II controlled substance; and

    e. the Defendant possessed the fentanyl with the intent to distribute the same.

## **Penalties**

3.     The maximum sentence provided by statute for the offenses to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 | 21 U.S.C. § 846 | 5 years | 40 years | 4 years to life | $5 million | $100 |
| 2 | 21 U.S.C. § 841(a) | 5 years | 40 years | 4 years to life | $5 million | $100 |

    a.     Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

    b.     Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

    c.     Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

    d.     Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

    e.     Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

      f.      Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

### **Waiver of Rights**

    4.    The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

      a.      If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

      b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

      c.      If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

      d.      The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

      e.      If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the

charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

    g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

    h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

  5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must consider the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

  6. This Office and the Defendant stipulate and agree to the Statement of Facts set forth in **Attachment A**, which is incorporated by reference herein.

    a. Count One:

      i. This Office and the Defendant agree that the applicable base offense level for Count One is **24** pursuant to United States Sentencing Guidelines

4

("U.S.S.G.") § 2D1.1(a)(5) and (c)(8) because the Defendant was in possession of at least 40 grams, but less than 160 grams of fentanyl.

    ii. This Office and the Defendant agree that there is a **2-level** increase in the base offense level pursuant to U.S.S.G. § 2D1.1(b)(1) because the Defendant possessed a dangerous weapon (including a firearm).

    iii. This Office and the Defendant agree that there is a **2-level** increase in the base offense level pursuant to U.S.S.G § 2D1.1(b)(12) because the Defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance.

    iv. This Office and the Defendant agree that there is a **4-level** increase in the base offense level pursuant to U.S.S.G. § 2D1.1(b)(13) because the Defendant knowingly misrepresented or knowingly marketed as another substance a mixture or substance containing fentanyl.

b. Count Two:

    i. This Office and the Defendant agree that the applicable base offense level for Count Two is **24** pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1(a)(5) and (c)(8) because the Defendant was in possession of at least 40 grams, but less than 160 grams of fentanyl.

c. Grouping:

    i. This Office and the Defendant agree that Counts One and Two Group for the purpose of calculating the base offense level, pursuant to U.S.S.G. §3D1.2(d). The adjusted offense level is, therefore, agreed to be **32**.

7. This Office does not oppose a **2-level** reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a) based upon the Defendant's recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **1-level** decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

Based on the foregoing, the **anticipated adjusted offense level is 29**.

8. The parties agree that the Defendant's criminal history level is **I**.

9.     Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

### Rule 11(c)(1)(C) Plea

10.     The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of **96 months' imprisonment** in the custody of the Bureau of Prisons is the appropriate disposition of this case, taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a). This Agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine, or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that, if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the Government will be bound by the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw his plea.

### Obligations of the Parties

11.     At the time of sentencing, this Office and the Defendant will recommend a sentence of **96 months' imprisonment**. The parties may advocate for any period of supervised release and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office reserves the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office deems relevant to sentencing, including the conduct that is the subject of any counts of the Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

### Waiver of Appeal

12.     In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a.     The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

b.     The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including

6

the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

      i.      The Defendant reserves the right to appeal the sentence of imprisonment if the total term of imprisonment exceeds **96 months**; and

      ii.      This Office reserves the right to appeal the sentence of imprisonment if the total term of imprisonment is less than **96 months**.

      c.      The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Forfeiture

13.      The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

14.      Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities, including:

a. approximately $3,192.00 seized from the property at 825 Lenton Avenue, Baltimore City, Maryland;
b. approximately 1,689 narcotics-free pills of varying sizes and colors, including but not limited to calcium and magnesium pills;
c. pill-manufacturing and packaging equipment, including but not limited to electric pill presses and related components, heat sealing machines, sifters, and digital scales;
d. packaging materials, including but not limited to heat-sealed bags, mason jars, plastic tubs, and other containers;
e. approximately four (4) police uniforms with patches attached;
f. approximately seven (7) police patches;
g. a Hewlett-Packard laptop;
h. a large rifle box;
i. a drill press used to manufacture Polymer80 firearms;
j. approximately 40 Polymer80 jigs;
k. a GS GT6 .22 LR rifle, with no serial number visible;
l. a Polymer80 9mm handgun, bearing no serial number;
m. a RG firearms model 26, .25 ACP caliber handgun with serial number U036570;
n. a disassembled Springfield 1911 .45 ACP handgun, serial number 45581,

7

o. a North American Arms, "Companion", .22 caliber revolver serial number U7692;
p. a Polymer80 incomplete handgun including a lower receiver and slide;
q. a Glock model 32C, .357 SIG caliber handgun, bearing serial number LKP950;
r. a Glock model 27, .40 S&W caliber handgun, bearing serial number EEA771US, with an extended magazine;
s. a Smith & Wesson model SW40VE, .40 S&W caliber handgun, bearing serial number DVR9070;
t. a Smith & Wesson model SD9VE, 9mm Luger handgun, bearing serial number FCN7855;
u. a Taurus model Curve, .380 Auto caliber handgun, bearing serial number 1D138672;
v. a Masterpiece Arms, Inc., model Defender-MPA30T, bearing serial number FX21060, with attached suppressor;
w. a Freedom Ordnance model FX-9, 9mm Luger handgun bearing serial number 041737;
x. a Mossberg model 590, 12-gauge shotgun, bearing serial number V1141018;
y. approximately 15 cartridges of .357 caliber ammunition;
z. approximately 31 cartridges of .40 caliber ammunition;
aa. approximately 260 cartridges of 9mm ammunition;
bb. approximately six (6) cartridges of .380 Auto ammunition;
cc. approximately four (4) cartridges of .22 caliber ammunition; and
dd. approximately three (3) 12-gauge shotgun shells.

15. The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

16. The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

17. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

### Defendant's Conduct Prior to Sentencing and Breach

18. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

19. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Court Not a Party

20. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. In the event the Court rejects this Rule 11(c)(1)(C) plea agreement, pursuant to Rule 11(c)(5)(C), the Defendant will be informed that he may withdraw his plea. If he persists in the guilty plea thereafter, the Defendant understands that the disposition of the case may be less favorable than that contemplated by this agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

21. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing, signed by all parties, and approved by the Court.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Erek L. Barron
United States Attorney

By: _____
James I. Hammond
Special Assistant United States Attorney


I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

10-24-23
Date

_____
Norman Ralph Forrest, Defendant


I am the Defendant's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with the Defendant. The Defendant advises me that he understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

October 24, 2023
Date

_____
David Walsh-Little, Esq.

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

In April of 2021, the Baltimore Police Department ("BPD") and Homeland Security Investigations ("HSI") learned through investigation that large quantities of narcotics were being manufactured and distributed from 825 Lenton Avenue, Baltimore, Maryland 21212, including counterfeit pills coated with fentanyl. They also learned that firearms were being stored at the location.

On June 29, 2021, BPD SWAT and detectives executed a search and seizure warrant at 825 Lenton Avenue. Once inside, they located the Defendant, Norman Forrest ("Forrest"), and his wife, Latoyah McCoy, in the second-floor front bedroom along with their children, a fourteen-year-old child and a ten-year-old child who were both located on the second floor in a separate bedroom. Edward Miles and an adult male were located in the basement. Forrest, McCoy, and Miles are residents of the location.

The occupants were brought to the living room on the first floor. A search was conducted after a hazmat team cleared the location due to the presence of fentanyl and particulate matter in the air found in an unoccupied third bedroom on the second floor.

Investigators seized firearms, narcotics, and drug paraphernalia throughout the house, including the first floor living room, dining room, kitchen, basement, and upstairs bedrooms. Approximately 319 rounds of ammunition, various firearms parts, including approximately forty Polymer80 jigs used to complete privately made firearms or "ghost guns," a drill press for manufacturing Polymer80 firearms, a large rifle box, a Hewlett-Packard laptop, four police uniforms with attached patches, seven police patches, over 40g of fentanyl, over 40g of methamphetamine, large amounts of heroin, eutylone, and cocaine, hundreds of pills awaiting to be converted to fentanyl-coated counterfeit tablets and "molly," scales, sifters, electric pill presses, heat sealing machines, packaging material, and a total of $3,192 in U.S. currency were recovered throughout the house.

Investigators believe that the second-floor rear bedroom was used as a manufacturing lab for narcotics and as mentioned above had to be cleared by a hazmat team due to the presence of a large volume of fentanyl and air particles. Investigators recovered an electric pill press with residue, pill press parts, pill mix powder, sifters, digital scales, cutting agents, a heat sealer machine, heat seal bags, packaging material, powder heroin/fentanyl mixture, multicolor pills containing eutylone, crystalized methamphetamine, cocaine base, 1,689 multicolor pills that did not test positive for narcotics and were awaiting processing, and most of the U.S. currency recovered. Based on the seized items, investigators believe this residence was maintained for the purpose of manufacturing and distributing controlled substances.

The recovered controlled substances were submitted to the BPD Laboratory Section and tested. The BPD analysis revealed that the recovered suspected drugs contained 99.46g of a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance; 892.81g of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance; 129.39g of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance; 1,148.74g of a mixture or substance containing a detectable amount of eutylone, a Schedule I controlled substance; and 20.49g of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance.

Forrest stipulates and agrees that he knowingly and intentionally possessed the aforementioned mixtures or substances containing a detectable amount of fentanyl, methamphetamine, heroin, eutylone, and cocaine, and that he possessed the same with the intent to distribute.

Also recovered throughout the residence were approximately 14 firearms in varying states of assembly and operability, including: a GS GT6 .22 LR rifle, with no serial number visible; a RG firearms model 26, .25 ACP caliber handgun with serial number U036570; a disassembled Springfield 1911 .45 ACP handgun, serial number 45581a North American Arms, "Companion", .22 caliber revolver serial number U7692; a Glock model 32C, .357 SIG caliber handgun, bearing serial number LKP950; a Glock model 27, .40 S&W caliber handgun, bearing serial number EEA771US, with an extended magazine; Smith & Wesson model SW40VE, .40 S&W caliber handgun, bearing serial number DVR9070; a Smith & Wesson model SD9VE, 9mm Luger handgun, bearing serial number FCN7855, that was reported stolen on March 31, 2021; a Taurus model Curve, .380 Auto caliber handgun, bearing serial number 1D138672; a Masterpiece Arms Defender, Inc., model Defender-MPA30T, bearing serial number FX21060, with attached suppressor; a Freedom Ordnance model FX-9, 9mm Luger handgun bearing serial number 041737; a Mossberg model 590, 12-gauge shotgun, bearing serial number V1141018; and a completed Polymer80 PMF with no serial number.

The seized firearms, firearm parts, drill press, rifle box, Hewlett-Packard laptop, scales, sifters, electric pill presses, heat sealing machines, packaging material, narcotics-free pills, and the $3,192, are believed to proceeds of Forrest's drug trafficking activity, or were used, or intended to be used, to facilitate Forrest's drug offense.

Forrest participated in the activities of the conspiracy in the District of Maryland. Forrest participated in the drug trafficking conspiracy to traffic fentanyl, methamphetamine, heroin, eutylone, and cocaine base. Forrest and the coconspirators knowingly produced and distributed counterfeit pills and misrepresented them as other substances, such as 386 blue pills stamped M30, which would normally be identified as oxycodone, but contained fentanyl instead. Throughout the course of his involvement, it was reasonably foreseeable to Forrest, and within the scope of the conspiracy that he or other members of the conspiracy would distribute 40 grams or more of fentanyl as well as quantities of methamphetamine, heroin, eutylone, and cocaine base, during the course of and in furtherance of the conspiracy.

All the above-described events took place in the District of Maryland.

SO STIPULATED:

_____
SAUSA James I. Hammond

_____
Norman Ralph Forrest, Defendant

_____
David Walsh-Little, Esq.